**UNITED STATES DISTRICT COURT**
**DISTRICT OF MARYLAND**

CHAMBERS OF
PAUL W. GRIMM
CHIEF UNITED STATES MAGISTRATE JUDGE

101 W. LOMBARD STREET
BALTIMORE, MARYLAND 21201
(410) 962-4560
(410) 962-3630 FAX

September 26, 2011

Alan H. Legum Esq.
Alan Hilliard Legum, P.A.
275 West St., Ste 305
Annapolis, MD  21401

Alex Gordon, AUSA
36 S. Charles Street
4th Floor
Baltimore, MD  21201

**Re: Donald Horn v. Michael J. Astrue, Commissioner of Social Security, PWG-10-190**

Dear Counsel:

Presently pending before this Court, by the parties' consent, are Cross-Motions for Summary Judgment concerning the Commissioner's decision denying Mr. Horn's claim for Disability Insurance Benefits ("DIB"). (ECF Nos. 10, 14, 18). This Court must uphold the Commissioner's decision if it is supported by substantial evidence and if proper legal standards were employed. 42 U.S.C. § 405(g); *Craig v. Chater*, 76 F.3d 585, 589 (4th Cir. 1996); *Coffman v. Bowen*, 829 F.2d 514, 517 (4th Cir. 1987). A hearing is unnecessary. Local Rule 105.6. For the reasons that follow, this Court DENIES the Commissioner's Motion and GRANTS the Plaintiff's Motion for Summary Judgment and remands this case for further proceedings consistent with this Memorandum and Order.

Mr. Horn (sometimes referred to as "Claimant" or Mr. Horn) applied for DIB on October 15, 2001, alleging that he was disabled since April 1, 2001, due to depression, anxiety, and stress. (Tr. 63). His claim was denied initially and upon reconsideration. (Tr. 32-37). After a hearing held before an Administrative Law Judge ("ALJ"), the Honorable Robert W. Young, the ALJ denied Mr. Horn's claim. After the Appeals denied his request for review, Mr. Horn filed an appeal with this Court.

See *PWG-04-3279*. On November 29, 2005, the undersigned entered an Order vacating the ALJ's decision and remanding the case back to the Agency for further proceedings. *PWG-04-3279,* Paper nos. 13, 14.  On April 24, 2006 a second hearing was held before the same ALJ. (Tr. 381-404). On January 11, 2007 the ALJ issued a second unfavorable decision. (Tr. 267-276). The ALJ found that Mr. Horn had depressive and anxiety disorders, and a "rule out" diagnosis for a personality disorder, and that they were "severe" impairments, as defined in the Regulations.  The ALJ also found that these impairments did not meet or equal any of the Listing of Impairments("LOI").  The ALJ next found Mr. Horn retained the residual functional capacity ("RFC") to perform work at all exertional levels but that he had mental limitations secondary to his psychiatric impairments[1].  Based on his RFC, the ALJ found that Mr. Horn was precluded from performing his past relevant work ("PRW").  After receiving testimony from a vocational expert ("VE"), the ALJ found that there were jobs available in the national and local economies, existing in substantial numbers, which Claimant could perform[2]. Accordingly, the ALJ found Claimant was not disabled. (Tr. 267-276). On December 7, 2009, the Appeals Council denied Claimant's request for review, making his case ready for judicial review. (Tr. 260-267).

Claimant argues, *inter alia,* that the ALJ erred in determining his RFC and in finding that there was work he could perform. He also argues that the ALJ improperly rejected the opinions of a state agency physician and erred in presenting hypotheticals to the vocational expert.  As explained below, I am persuaded by Claimant's arguments and conclude that the ALJ's decision is not supported by substantial evidence, and therefore DENY the Commissioner's Motion and will remand this case one final time for further proceedings.

The Court finds that the ALJ erred at steps four and five of the sequential evaluation in evaluating Mr. Horn's mental RFC

---

[1] The ALJ found Claimant could: "perform work at all physical exertion levels and was limited to simple, repetitive, unskilled tasks with minimal interaction with other people." (Tr. 275).

[2] The ALJ found Mr. Horn could perform work as a packer, machine operator, and file clerk. (Tr. 276).

and in presenting hypotheticals to the VE.  The ALJ failed to discuss whether he considered properly all of the evidence in determining Claimant's RFC.  The ALJ found Mr. Horn's RFC was as follows:

> He could "perform work at all exertional levels but that he had mental limitations secondary to his psychiatric impairments i.e., limited to simple, repetitive, unskilled tasks, with minimal interaction with other people." (Tr. 275).

The ALJ documented his specific findings as to the degree of limitation in each of the four areas of functioning described in paragraph(c) of §416.920a[3].(Tr. 271). However the ALJ's discussion of Mr. Horn's mental limitations at steps two and three was not an RFC assessment[4], and did not satisfy the ALJ's duties at step 4 of the sequential evaluation.  SSR 96-8p, in relevant part, states as follows:

> [T]he adjudicator must remember that the limitations identified in the "paragraph B" and "paragraph C" criteria **are not an RFC assessment** but are used to rate the severity of mental impairments at steps 2 and 3 of the sequential evaluation process. **The mental RFC assessment used at steps 4 and 5 of the sequential evaluation process requires a more detailed assessment**

---

[3] The ALJ found that Mr. Horn had the following limitations: "mild" limited in her activities of daily living; "moderately" limited in social functioning; "moderately" limited in ability to concentrate; and he experienced "one" episode of decompensation. (Tr. 271-272).

[4] The Introduction to Listing 12.00 *Mental Disorders*, in relevant part, states: "**An assessment of your RFC complements the functional evaluation necessary for paragraphs B and C of the listings by requiring consideration of an expanded list of work related capacities that may be affected by mental disorders when your impairment is severe but neither meets nor is equivalent in severity to a listed mental impairment**." *See* 20 CFR Pt. 404, Subpt.P, App. 1 (emphasis added); *See also* SSR 96-8p (1996 WL 374184).

**by itemizing various functions contained in the broad categories found in paragraphs B and C of the adult mental disorders listings in 12.00 of the Listing of Impairments, and summarized on the PRTF**. SSR 96-8p (1996 WL 374184, *4(S.S.A.)).(Emphasis added).

The ALJ's RFC finding did not include any of the required detailed findings. Rather, the ALJ stated, in conclusory fashion, that Mr. Horn could perform "simple, repetitive unskilled tasks with minimal interaction with other people." This was not an adequate assessment. *Hilton v. Barnhart* 2006 WL 4046076 (D. Kan.) citing *Wiederholt v. Barnhart, 121 Fed. Appx. 833 (10th Cir. 2005)*(the relatively broad unspecified nature of the description "simple" and unskilled" does not adequately incorporate the more specific findings required).

The primary problem in this case is the ALJ's failure to adequately explain **why** he was discrediting the VE's testimony in response to questions that included the detailed assessment of "moderate" mental limitations in nine different areas found by Dr. Rogers as stated in Exhibit 8F. (Tr. 185-187, 402)(emphasis added). The ALJ stated only "with regard to the hypothetical asked by counsel the undersigned does not find that the Claimnt would need to miss work 1.5-2 days per month or would lose 20% of productivity if the claimant is working in an unskilled low stress environment with the restrictions contained in the first hypothetical."(Tr. 276). This is inadequate since the VE stated that the moderate limitations found in Dr. Rogers report resulted in an individual missing work a day and a half and would lose 20% productivity. (Tr. 402).

Equally important is the ALJ's failure to discuss the weight accorded to the Mental Residual Functional Capacity Assessment completed by Dr. Rogers. *See* Exhibit 3-F (Tr. 108-110, 274). The ALJ merely summarized Dr. Rogers' findings, but never explained how they influenced his RFC determination.  On December 14, 2001, Dr. Rogers reviewed Mr. Horn's records and stated that Mr. Horn was "moderately" limited in his abilities to:

1) understand and remember detailed instructions;
2) carry out detailed instructions;
3) maintain attention and concentration for extended periods;

4

4) perform activities within a schedule, maintain regular attendance, and be punctual within customary tolerances;
5) complete a normal work-day without interruptions from psychologically based symptoms and to perform at a consistent pace without an unreasonable number and length of rest periods; and
6) accept instructions and respond appropriately to criticism for supervisors;
7) get along with coworkers or peers without distracting them or exhibiting behavioral extremes;
8) respond appropriately to changes in the work setting;
9) set realistic goals or make plans independently of others. (Tr. 185-186).

The RFC assessment **must always consider and address medical source opinions.** SSR 96-8p (1996 WL 374184, *7) (S.S.A.))(emphasis added).If the RFC assessment conflicts with an opinion from a medical source, the adjudicator must explain why the opinion was not adopted. *Id*. Because the ALJ did not explain why he chose not to adopt Dr. Rogers' opinions and further failed to perform the function-by-function assessment described in SSR 96-8p[5]--the undersigned has no way of knowing whether the ALJ properly considered this evidence and consequently whether this evidence supports, or conflicts with, the ALJ's finding regarding Mr. Horn's RFC. All limits on work related activities resulting from the mental impairment must be described in the mental RFC assessment.  SSR 85-16 *Residual Functional Capacity for Mental Impairments* (1985 WL 56855, *2) (S.S.A.)).

According to Social Security Ruling ("SSR") 96-8p, the mental activities required by competitive, remunerative, unskilled work include:

Understanding, remembering and carrying out simple instructions.

---

[5] SSR 96-8p, in relevant part, states: Initial failure to consider an individual's ability to perform the specific work-related functions could be critical to the outcome of a case.(1996 WL 374184, *3 (S.S.A.))

>Making judgments that are commensurate with the functions of unskilled work-i.e., simple work related decisions.
>Responding appropriately to **supervision co workers and usual work situations dealing with changes in the work setting**.

(SSR 96-8p 1996 WL 374184 at *6)(Emphasis added).

The limitations found by Dr. Rogers are clearly relevant to Claimant's ability to perform unskilled work, but the ALJ failed to discuss Dr. Rogers' findings adequately in his decision. This failure was prejudicial because, as noted previously, when these precise limitations were included in the hypothetical presented to the VE, the VE stated no work existed for such an individual who had the mental limitations referred to in Exhibit 8-F.(Tr. 401-402, 536-538).

Simply stated, it is not clear from his decision whether the ALJ properly evaluated Mr. Horn's impairments at the fourth or fifth step of the sequential evaluation. *See Baker v. Chater*, 957 F. Supp. 75, 79 (D. Md. 1996)(in evaluating the severity of mental impairments a special procedure must be followed by the Commissioner at each level of administrative review). I am remanding this case one final time for the Commissioner to insure that Mr. Horn receives a proper evaluation of his claims. Should the Commissioner fail to do so then on subsequent review by the court any further remand will be for the sole purpose of awarding benefits. *Marshall v. Sullivan*, 908 F.2d 248 (4th Cir. 1990)(unpublished).

Accordingly, this Court **REMANDS** this case to the Commissioner pursuant to 42 U.S.C. 405(g). A separate Order shall issue.

_____/s/_____
Paul W. Grimm
United States Magistrate Judge